IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ADNAN MOHAMMAD ADNAN JABEE,
          *Petitioner*,

   v.

RUSSELL HOTT, *et al.*,
          *Respondents*.

1:26-cv-970-MSN-IDD

ORDER

Adnan Mohammad Adnan Jabee ("Petitioner") filed a one-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his continued immigration detention violates his due process rights.

Petitioner is currently detained at the Farmville Detention Center in Farmville, Virginia. ECF 1 ¶ 15. He has sued Todd M. Lyons, ICE's Acting Director; Russell Hott, the Field Office Director of ICE's Washington Field Office; Markwayne Mullin, the DHS Secretary; and Pamela Bondi, the former Attorney General (collectively "Federal Respondents"). *Id*. at 1. He has also sued Jeffrey Crawford, the warden of the Farmville Detention Center. *Id*.

The Petition initially framed the permissibility of Petitioner's detention as a matter of whether he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) or if he was detained under 8 U.S.C. § 1226(a) and thus entitled to a bond hearing that Federal Respondents were allegedly withholding on the basis of their policy and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). ECF 1. In response, the Federal Respondents aver that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). ECF 10 at 2. Petitioner filed a reply, arguing

that regardless of whether this case was analyzed under § 1225 or § 1226, Petitioner's due process rights were violated when decisions about his re-detention were made without a meaningful opportunity to be heard. ECF 11.

## I.    BACKGROUND

### A.    Factual Background

Petitioner is a citizen of Jordan. ECF 10-1 ¶ 5. He was encountered by Customs and Border Protection Officers on or about October 17, 2024, in Dulzura, California, after having crossed into the United States from Mexico. *Id.* ¶ 6. Initially, Petitioner was placed in expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A). *Id.* at ¶ 7. However, before he could be removed, he expressed a fear of returning to his country and was referred to USCIS for a Credible Fear Interview. *Id.* at 2-3. Petitioner received a positive credible-fear determination and was charged with being inadmissible to the United States, issued a Notice to Appear, and placed in removal proceedings. ECF 11 at 2; ECF 10-1 ¶ 8. On January 24, 2025, Petitioner was placed on "Interim Parole," and enrolled in an Alternative to Detention ("ATD") program with a GPS monitoring system. ECF 10-1 ¶ 9. The government alleges that while on this "Interim Parole," Petitioner violated the terms of the ATD program four times. ECF 10-1 ¶¶ 10-11, 13-14; ECF 10-2, Record of Deportable/Inadmissible Alien at 2. Petitioner filed an application for asylum on April 21, 2025. ECF 10-1 ¶ 12. On February 4, 2026, Petitioner was detained by ICE. ECF 10-1 ¶ 15. Petitioner was not provided a bond determination, and on March 18, 2026, his custody redetermination request was denied because the Immigration Judge concluded that the court had "No Jurisdiction." *Id.* ¶¶ 1-2; ECF 1-2 at 1. Petitioner remains detained at the Farmville Detention Center. *Id.* ¶ 13.[1]

---

[1]    Federal Respondents have waived any argument that Petitioner did not exhaust his administrative remedies with respect to his habeas claim.

### B.    Legal Background

Persons detained upon arrival into the United States fall into two categories: noncitizens including those who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" or specially designated by the Attorney General covered under 8 U.S.C. § 1225(b)(1), and "most other applicants for admission" covered under the "catchall" provisions of 8 U.S.C. § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Persons subject to Section 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id*. But, if a noncitizen subject to Section 1225(b)(1) indicates either an "intention to apply for asylum' or a "fear of persecution," then they will be referred for an asylum interview by an immigration officer. *Id*. If the officer determines that the noncitizen has a "credible fear" of persecution, then the claim will receive "full consideration" in standard removal proceedings pursuant to 8 U.S.C. § 1229a. *Dep't of Homeland Sec, v. Thuraissigiam*, 591 U.S. 103, 110 (2020).

In such a scenario, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But even so, the government may still release the noncitizen on parole "on a case by case basis for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing 8 U.S.C. § 1182(d)(5)(A)). Regulations require that, in determining whether parole is appropriate, DHS officials "should apply reasonable discretion" and may consider "all relevant factors" including: the giving of an undertaking by the applicant, counsel, or sponsor to ensure appearances or departure; community ties such as close relatives with known addresses; and agreement to reasonable conditions (such as periodic reporting of whereabouts." 8 C.F.R. § 212.5(d) (noting that appropriate bond or

3

"reasonable assurances that the alien will appear at all hearings, and/or depart the United States when required to do so" may be required).

Humanitarian parole "shall not be regarded as an admission of the alien" and if parole is revoked, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). But in revoking parole, Section 1182(d)(5)(A) requires that the DHS determine that "the purposes of such parole . . . have been served." Moreover, the regulations specify that:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) <u>if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.</u>
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, <u>upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated</u> upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified. Any further inspection or hearing shall be conducted under section 235 or 240 of the Act and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody.

> 8 C.F.R. § 212.5(e) (emphasis added).

8 U.S.C. § 1226, in contrast, establishes "the default rule" for detaining and removing aliens "'already present in the United States.'" *Duarte Escobar v. Perry*, 807 F. Supp. 3d 564, 578 (E.D. Va. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). Section 1226(a) provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and

4

detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Pending the removal decision, the Attorney General may "continue to detain the arrested alien," "release the alien on ... bond of at least $1,500," or "release the alien on... conditional parole." *Id.* § 1226(a)(1)–(2) (emphasis added). Thus, individuals subject to detention under § 1226(a) are entitled to a bond hearing.

§§ 1225 and 1226 create a dichotomy: § 1225(b)(2)(A) "covers aliens seeking admission to the United States" and § 1226(a) "covers aliens already present in the United States." *Duarte Escoboar*, 807 F. Supp. 3d at 578. A detainee seeking bond must therefore demonstrate that they are detained subject to § 1226, which permits bond determinations, rather than § 1225, which does not.

## II.    ANALYSIS

The central question presented in this Petition is whether Petitioner's re-detention violates due process. Petitioner initially claimed his detention was unlawful because it was governed by 8 U.S.C. § 1226(a), thereby creating an obligation to provide him a constitutionally compliant bond hearing. *See* ECF 1 at 2-3. Federal Respondents countered that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii), that Petitioner has received all of the process to which he is due, and that the length of his detention does not mandate a bond hearing. ECF 10 at 6-10. Petitioner responded that regardless of whether the Court analyzes this case under Section 1225, Section 1226, or the Fifth Amendment, Petitioner's summary re-detention denied him meaningful due process. ECF 11 at 2.

Petitioner is correct. Regardless of the statutory petition under which Petitioner is detained, Federal Respondents failed to provide him with due process. To be clear, neither party has described in detail the statutory and regulatory scheme governing the revocation of parole. Further,

neither party provided the Court with Petitioner's parole paperwork. Both parties agree that Petitioner was release from detention on "interim parole." *See* ECF 10 at 5 ("On or about January 24, 2025, Petitioner was released on Interim Parole and enrolled in an Alternative to Detention ("ATD") program with a GPS monitoring system."); ECF 11 at 2 ("After credible fear, Mr. Jabee was released into the community on Interim Parole and placed on ATD/GPS supervision.").

However, Federal Respondents failed to offer any argument as to whether the purposes of his parole had been served. Similarly, the record provides no indication whether the purposes of Petitioner's parole had been served prior to his detention. Petitioner argues that he was not given a parole-revocation hearing or any kind of meaningful opportunity to be heard. ECF 11 at 2 ("That is not a bond decision. It is not a parole-revocation hearing. It is not a finding that detention is necessary. It is categorical detention without a meaningful opportunity to be heard."). He also cited supportive decisions that stand for the proposition that parole cannot be revoked without due process. *See e.g.*, *Pineda-Berrios v. Lyons et al*, ECF 13, No. 1:25-cv-2332-LMB-LRV (E.D. Va. Feb. 11, 2026); *Seleznev v. Mullin, et al.*, No. 3:26-CV-130, 2026 WL 907692, at *6 (E.D. Va. Apr. 2, 2026).

The Court observes that Judge Brinkema's opinion in *Pineda-Berrios v. Lyons et al*, ECF 13, No. 1:25-cv-2332-LMB-LRV (E.D. Va. Feb. 11, 2026), concerns facts and law that are materially indistinguishable from the case at hand, and the Court adopts and incorporates the reasoning in *Pineda-Berrios* in whole. DHS does not have pure discretion to revoke parole. *Id*. at *7. Fundamentally, Federal Respondents have effectively revoked Petitioner's parole and detained him but without any notice, hearing or individualized consideration of Petitioner's circumstances or whether the purposes of parole had been accomplished that the regulations and due process require. *Id*. at 9-14 & n.3 (collecting cases); *see, e.g.*, *Edrees Omari v. Todd Lyons, et al.*, 1:25-cv-

2483, ECF 9 (E.D. Va. Feb. 17, 2026); *Seleznev*, 2026 WL 907692, at *6 ("As Mr. Seleznev correctly observes, courts around the country have determined that, when, as here, a petitioner is paroled into the United States for purposes of applying for asylum, and that asylum application remains pending, revoking parole without a determination as to whether its purposes have been served is inappropriate.") (citation omitted); *Perez v. LaRose*, 2025 WL 3171742, at *4-5 (S.D. Cal. Nov. 13, 2025); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 416-20 (S.D.N.Y. Sept. 12, 2025). Thus, Petitioner's current detention is unlawful, and Federal Respondents must release him.

### III.   CONCLUSION

Accordingly, it is hereby

For all the reasons stated above, the Petition (ECF 1) is GRANTED, and it is hereby

ORDERED that Petitioner be immediately released from custody, with all his personal property, subject to the conditions of his existing parole, except for any one-year limitations; it is further

ORDERED that Federal Respondents—along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—be and are ENJOINED from rearresting Petitioner unless (1) he commits a violation of any federal, state, or local law; (2) he fails to comply with the conditions of parole, except for the one-year limitation; or (3) his parole has been lawfully revoked in a manner consistent with 8 C.F.R.§ 212.5(e).

8

The Clerk of Court is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, to forward a copy of this Order to counsel of record, and to close this civil action.

**IT IS SO ORDERED.**

/s/
_____
Michael S. Nachmanoff
United States District Judge

May 4, 2026
Alexandria, Virginia